Jason D. Haymore 13236
Haymore Law PC
11564 Gold Dust Drive
South Jordan, UT 84095
(p)801-438-4808
(f)801-438-4809
JHaymore@Haymorelaw.com

**IN THE UNITED STATES DISTRICT COURT,
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| BETSY BATES,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>AVALON OF UTAH. L.L.C., dba AVALON HEALTHCARE GROUP, and AVALON CARE VENTER – V.A. IVINS. L.L.C. dba SOUTHERN UTAH VETERANS HOME – IVINS,<br><br>　　　　　Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Case No.: 2:16-cv-00062-CW<br><br>Honorable Judge:  Clark Waddoups. |

Plaintiff Betsy Bates brings this action under the Federal False Claims Act, 31 U.S.C. §3730(h), and the Utah Common law, and alleges as follows:

## JURISDICTION

1.　Jurisdiction of this action is conferred upon this Court by the federal False Claims Act. 31 U.S.C. §3730(h). This court also has jurisdiction of this action pursuant to its federal question jurisdiction, in light of the existence of a controversy arising under the laws of the United States, pursuant to 28 U.S.C. §1331, and supplemental jurisdiction under 28 U.S.C. §1367.

## PARTIES

2.　Plaintiff Betsy Bates is an adult individual, competent to bring this action, a citizen of the State of Utah, and a resident of Washington County within the State of Utah.

3. Plaintiff is informed and believes, and thereon alleges, that Defendant Avalon of Utah L.L.C. dba Avalon Healthcare Group (herein "AHG") and Defendant Avalon Care Center – V.A. Ivins dba Southern Utah Veterans Home – Ivins (herein "SUVH") are both Utah Limited Liability Companies with their principal places of business in Utah.

4. Plaintiff is informed and believes, and thereon alleges, that AHG and SUVH are both government contractors that receive state and federal Medicaid and/or Medicare funds.

## FACTS

5. Ms. Bates is a Licensed Dietitian. She has worked in the nutrition food industry for more than twenty years. She is board certified in Gerontology Nutrition.

6. Ms. Bates was offered employment by Defendants as a "Nutrition Services Director" for SUVH on May 9, 2013.

7. Ms. Bates began working for Defendants on June 9, 2013.

8. Defendants agreed to pay Ms. Bates an annual salary of $60,000.00 in exchange for her work.

9. Prior to working for SUVH, Ms. Bates was a Clinical Dietitian/Food Service Manager for the State of Utah Department of Human Services working at the Utah State Developmental Center in American Fork, Utah. While working in this capacity, she was responsible for the nutritional care of two hundred twenty-five mentally retarded individuals.

10. Prior to working as a Clinical Dietitian/Food Service Manager for the State of Utah Department of Human Services, Ms. Bates worked for the Utah State Department of Health as a Health Program Surveyor. In this capacity, she was responsible to perform inspections of certain health care facilities to determine federal and state Medicaid/Medicare compliance.

11. Shortly after beginning work at SUVH, Ms. Bates witnessed several unlawful nutritional training and monitoring practices. Some of these unlawful practices are as follows:

    a. Residents weights were not taken correctly or consistently;

  b. The nurses , including the Director of Nursing, did not attend mandatory weekly weight meetings and did not sign weight notes in medical charts which caused delayed treatment;

  c. Meal intake notes for residents were not recorded in medical charts accurately or were not taken at all;

  d. Monthly or weekly weight was not being taken on at risk residents;

  e. Malnourished residents were not assessed by a registered dietitian within 72 hours;

  f. Doctors were not notified for residents at risk for malnutrition or weight loss;

  g. Unqualified diet technicians were completing assessments on high risk residents;

  h. Residents were left unattended in the dining room during meals without nursing supervision, which placed residents who were at risk for chocking and/falling in danger;

  i. Poorly functioning meal carts were not holding the temperature of the food;

  j. Thousands of dollars was spent on unnecessary equipment that was often missing or otherwise unaccounted for; and

  k. Diets were prescribed that were not wanted or needed and were implemented without the proper follow-up.

12. Ms. Bates reported the unlawful practices to Jerry Olson, Administrator, and Michelle Marquez, Director of Nursing.

13. Days after having reported the circumstances paragraph 11 above, Ms. Bates was instructed that she could no longer (1) write of care plans, (2) give nutritional recommendations, (3) attend skin and weight meetings, or (4) document as a licensed registered dietitian.

14. The purpose of these restrictions was to block Ms. Bates from access to medical facts related to underfeeding or malnourishment of the veteran residents.

15. Shortly after receiving these restrictions, on or about November 5, 2013, Ms. Bates was demoted from Nutritional Services Director to Dietary Manager. In conjunction with this demotion, her salary was reduced.

16. Defendants gave the responsibilities that had been taken away from Ms. Bates to Celesta Lyman, an inexperienced and less qualified part time employee who worked off-site.

17. Shortly after her demotion, Ms. Bates was given an "annual performance review" even though she had only been employed for four months.

18. On December 10, 2013, Ms. Bates reported to Olson and Marquez that four veterans were malnourished.

19. Because no action was taken to address the malnourishment of the veteran residents by Defendants, Ms. Bates reported the matter to The Department of Health and Human Services.

20. Within thirty days of filing her complaint with the Department of Health and Human Services, Defendants fired Ms. Bates.

21. In April, 2014, Ms. Bates complaints were investigated the SUVH facility and found that of five sample residents, the facility did not ensure that a resident (1) maintained acceptable parameters of nutritional status, such as body weight, and (2) receive a therapeutic diet when there was a nutritional problem. Specifically, one resident experienced a 16.58% weight loss over 180 days with no dietary interventions.

22. Shortly after Ms. Bates' termination, approximately twenty-four veterans were poisoned with tainted food.

23. Also after Ms. Bates' termination the facility failed to order essential nutritious food for the veterans and fed them take-out pizza for lunch and dinner for three straight days.

**FIRST CAUSE OF ACTION**
**(Retaliatory Discharge in Violation of 31 U.S.C. 3730(h) – Against all Defendants)**

24. Plaintiff re-alleges all statements in previous paragraphs and incorporates them herein.

25. By complaining to management and administrative authorities about the malnourishment of veterans and lack of training and compliance with Medicaid/Medicare rules and regulations within Defendants nursing home facility, Ms. Bates engaged in conduct protected by the Federal False Claims Act.

26. Defendants had knowledge of Ms. Bates protected activity.

27. By taking away responsibilities, demoting her, reducing her pay, harassing her with annual performance reviews only four months after employment, and ultimately terminating her employment, Defendant retaliated against Ms. Bates for engaging in protected activity in violation of 31 U.S.C. 3730(h).

28. Plaintiff requests that Defendants be held liable for reinstatement or employment, double back-pay, and compensatory damages as 31U.S.C. §3730(h) provides.

29. Plaintiff also requests that Defendants be held liable for reasonable attorney's fees as 31 U.S.C. 3730(h) provides.

## SECOND CAUSE OF ACTION
### (Wrongful Discharge in Violation of Utah Public Policy – Against all Defendants)

30. Plaintiff re-alleges all statements in previous paragraphs and incorporates them herein.

31. Defendant retaliated against Plaintiff for reporting abuse, neglect, or exploitation of nursing home residents by taking away her responsibilities, demoting her, reducing her pay, harassing her with annual performance reviews only four months after employment, and ultimately terminating her.

32. Utah has a clear and substantial policy that prohibits an employer from retaliating against an employee who reports suspected abuse, neglect, or exploitation of nursing home residents.

33. Plaintiff's ultimate termination and report of abuse, neglect, or exploitation of nursing home residents are causally linked.

34. Plaintiff was also exercising a legal right or privilege pursuant to 31 U.S.C. §3730(h).

35. Retaliatory discharge for exercising such a right also violates the public policy of the State of Utah, and consequently Ms. Bates has a wrongful discharge cause of action.

36. Plaintiff requests that Defendants be held liable for reinstatement, back-pay, and compensatory damages.

37. Plaintiff also requests that Defendants be held liable for reasonable attorneys' fees.

38. Plaintiff all requests exemplary damages as proven at trial and as deemed appropriate by this court which are justified in light of Defendants blatant disregard of Ms. Bates' rights, the fact that Defendants' actions have placed veteran seniors health and safety at risk, and the size and financial resources of Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief from this court and requests that:

1. The court declare adjudge and decree that Plaintiff was illegally discharged by Defendants in retaliation for having engaged in, and being about to engage in, activities protected under 31 U.S.C. §3730(h);

2. The Court declare, adjudge and decree that: Plaintiff was illegally discharged by Defendant in violation of Utah common law and public policy;

3. The court reinstate Plaintiff, and an award of double back-pay and compensatory damages pursuant to 31 U.S.C. §3730(h);

4. The Court order reinstatement of Plaintiff, and an award of back-pay and compensatory damages pursuant to Utah common law;

5. The court award Plaintiff reasonable attorneys' fees, expenses and costs of suit;

      6.      The Court award Plaintiff pre-judgment and post-judgment interest as provided by law;

      7.      The court decrees such other injunctive relief and/or enter such other orders as are necessary to dissipate or relieve the effects of the aforesaid violations and illegal acts by Plaintiff.

      8.      The court award Plaintiff such other relief as the Court deems just and proper.

Dated this January 26, 2016

      `/s/ Jason D. Haymore`

Jason D. Haymore
Attorney for Plaintiff